IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADVEST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Civil Action No. 03-1372 |
| ) | |
| GEORGE WAGNER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

Plaintiff Advest, Inc. ("plaintiff" or "Advest") brought this action under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. (the "FAA"), in the nature of a petition to compel arbitration and stay a civil action that defendant George Wagner ("defendant" or "Wagner") commenced in state court. This court heard evidence and argument during a bench trial on November 10, 2004. On January 5, 2005, the parties filed proposed findings of fact and conclusions of law.

Pursuant to Federal Rule of Civil Procedure 52, this court makes the following findings of fact and conclusions of law.

**I. FINDINGS OF FACT**

1.  Advest is a corporation that provides securities brokerage, investment banking, and asset management services. Advest is licensed to do business within the Commonwealth of Pennsylvania. Advest is a member of the National Association of Securities Dealers ("NASD"). Joint Stipulations, ¶ 1.

2. In January 1996, Wagner became a client of Advest by opening a brokerage account (the "Account") and signing an Advest Account Application and an IRA Application. Joint Stipulations, ¶ 2.

3. According to the booklet accompanying the Advest Account Application ("Account Agreement and Information About Your Advest Account"), the agreement Wagner made with Advest concerning his brokerage account includes "the Brokerage Agreement, . . . these Definitions, the Account Application, and any other written agreements between us concerning the Brokerage Account. . . . " Joint Stipulations, Ex. 1 at 17.

4. The Advest Account Application, IRA Application, and the booklet accompanying the Advest Account Application ("Account Agreement and Information About Your Advest Account") (together, the "Agreements") are clearly identified as Advest account documents. Joint Stipulations, Ex. 1. Plaintiff's uncontested testimony at trial establishes that Advest prepared the original forms of these documents. Trial Transcript at 21.

5. The Agreements are contracts evidencing a transaction involving commerce, as defined by the Federal Arbitration Act, 9 U.S.C. § 1. Joint Stipulations, ¶ 3.

6. The Agreements included, <u>inter alia</u>, several clauses dealing with the arbitrability of disputes arising under the Agreements. Joint Stipulations, Ex. 1.

7. Immediately above Wagner's signature on page 2 of the Advest Account Application is the following language:

> **By signing below, I also acknowledge that . . . I have received, read and understand the terms and conditions of the Account Agreement set forth in the accompanying booklet. . . . In accordance with the pre-dispute arbitration clause in Section 15 of the Brokerage Agreement on page 7,**

> **I am agreeing in advance to arbitrate any controversies which may arise with you**.

Joint Stipulations, Ex. 1 at second page (unnumbered) (emphasis in original).

8. In addition, Section 15 of the Advest Account Agreement contains the following arbitration clause:

> You agree that *all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of the Account Agreement or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration* . . . . This arbitration provision shall be enforced and interpreted exclusively in accordance with applicable Federal law, including the Federal Arbitration Act.

Joint Stipulations, ¶ 4; Joint Stipulations, Ex. 1 at 7-8 (emphasis added).

9. Immediately above Wagner's signature on the IRA Application is the following language:

> I have received and read the Advest, Inc. Prototype Individual Retirement Account Plan and Disclosure Statement, the Advest Brokerage Agreement (Appendix A), and the Beneficiary Information below. . . . **By signing below, I also acknowledge that, in accordance with the pre-dispute arbitration clause in Section 5 of the Brokerage Agreement, I am agreeing in advance to arbitrate any controversies which may arise with you**.

Joint Stipulations, Ex. 1 at 7-8 at third page (unnumbered) (emphasis in original).

10. The Agreements define the terms "[w]e/us/our/Advest" to mean "Advest, its subsidiaries, affiliates, officers, directors, agents or employees." Joint Stipulations, Ex. 1 at 18.

11. During the relevant time period, "Nussbaum Partners" referred to a group of licensed securities representatives employed by Advest. Joint Stipulations, ¶ 8; Trial Transcript at 5.

12. All members of "Nussbaum Partners" worked as a team and pooled their commissions. Trial Transcript at 5.

13. All members of "Nussbaum Partners" were employees of Advest. In Pittsburgh, they worked at the Advest office at 3400 One Oxford Center. Trial Transcript at 5-6.

14. "Nussbaum Partners" did not maintain separate office space, did not file tax returns in the name of "Nussbaum Partners", and did not have any separate employees. Trial Transcript at 5-6.

15. "Nussbaum Partners" was not listed on the building registry of One Oxford Center, where Advest maintains its Pittsburgh office. Trial Transcript at 7.

16. "Nussbaum Partners" did not maintain a separate telephone listing in the name of "Nussbaum Partners." Trial Transcript at 7.

17. Advest paid compensation and benefits to the members of "Nussbaum Partners." Advest paid compensation to the members of "Nussbaum Partners" pursuant to a pooling arrangement that the members of "Nussbaum Partners" agreed upon with each other. Trial Transcript at 6-7.

18. "Nussbaum Partners" did not make any payments to anyone in the name of "Nussbaum Partners." Trial Transcript at 7.

19. The pooling arrangement among the members of "Nussbaum Partners" was not in writing. Trial Transcript at 6.

20. "Nussbaum Partners" did not receive payments in the name of "Nussbaum Partners." Trial Transcript at 7-8.

21. "Nussbaum Partners" was one of numerous marketing teams maintained by account executives employed by Advest. Trial Transcript at 25-27.

22. The members of "Nussbaum Partners" advertised their investment services using marketing materials created subject to the approval of Advest. Trial Transcript at 17. These marketing materials show the Advest name. Trial Transcript at 17-18, 20-21.

23. Advest considers "Nussbaum Partners" to be a fictitious name referring to individual investment employees who operate under the supervision of Advest. Trial Transcript at 32-33, 35.

24. The individual investment advisors who used the name "Nussbaum Partners" operated under the supervision and control of Advest. Trial Transcript at 17, 32, 33-35. For example, every letter that "Nussbaum Partners" sends to clients must go through the Advest system. Trial Transcript at 17. Every account that belongs to "Nussbaum Partners" is assigned a tracking number by Advest's Compliance and Payroll departments. Trial Transcript at 32-33. The Advest branch manager supervises the activities of "Nussbaum Partners" with respect to procedures and rules set forth in the Advest compliance manual. Trial Transcript at 33.

25. "Nussbaum Partners" sent marketing materials to clients from "Nussbaum Partners." These marketing materials included both Advest and "Nussbaum Partners" in the letterhead or on the cover page. Defendant's Trial Exs. 3, 4, and 5.

26. Wagner's primary contact for the Account was Robert Feldman. Robert Feldman was a licensed representative employed by Advest who used the name "Nussbaum Partners" along with other licensed representatives employed by Advest. Joint Stipulations, ¶ 9; Trial Transcript at 5.

27. Robert Feldman's business cards identify him as a Vice President-Investments, Retirement Planning Specialist, and Investment Adviser Agent for Advest. Robert Feldman's business cards do not show the name "Nussbaum Partners." Trial Transcript at 14; Defendant's Ex. 2.

28. Every account representative who had responsibility for Wagner's Account and who had contact with Wagner regarding the Account was at all times an employee of Advest and licensed by the Commonwealth of Pennsylvania. Joint Stipulations, ¶ 10.

29. The name "Nussbaum Partners" does not appear anywhere within the body of the Agreements controlling the Account. Joint Stipulations, ¶ 5; Joint Stipulations, Ex. 1.

30. The statements for the Account are on Advest letterhead, relate to Wagner's account with Advest, and include the name "Nussbaum Partners" under "Your Investment Executive" or "Your Financial Advisor." Joint Stipulations, ¶ 14; Joint Stipulations, Ex. 4.

31. Advest assigned to "Nussbaum Partners" a single Account Executive Number, number 618. Trial Transcript at 23-24, 32-33.

32. Advest assigned to Wagner's Account the Account Executive Number 618, the number belonging to "Nussbaum Partners." Trial Transcript at 24.

33. Wagner opened the Account with a rollover check that was made payable to Advest for the benefit of George Wagner. Trial Transcript at 7.

34. On August 6, 2003, Wagner commenced a civil action in the Court of Common Pleas of Allegheny County, at Docket No. GD-03-14702, against "Nussbaum Partners" (the "Civil Action"). Joint Stipulations, ¶ 6; Joint Stipulations, Ex. 2.

35. Wagner served the complaint in the Civil Action by directing the Sheriff of Allegheny County to deliver the complaint to Advest's office at One Oxford Centre in Pittsburgh, and the Sheriff did so on August 25, 2003. Joint Stipulations, ¶ 7.

36. Prior to filing the Civil Action, Wagner, through his attorney, demanded that Advest voluntarily agree to rescind his transactions. Joint Stipulations, ¶ 13; Joint Stipulations, Ex. 3.

37. As part of this demand, Wagner requested that Advest pay to him the sum of $150,067.48, the alleged losses of Wagner on his account. Joint Stipulations, Ex. 3.

## II. CONCLUSIONS OF LAW

1. Federal policy favors resolving disputes through arbitration. See Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) ("'[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)).

2. Under the FAA and case law interpreting it, a court confronting a motion to compel arbitration must inquire (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute at issue falls within the scope of the agreement. See 9 U.S.C.§§ 1, et seq.; Trippe Mfg. Co., 401 F.3d at 532 (citing Painewebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002)); Bellevue Drug Co. v. Advance PCS, 333 F.Supp.2d 318, 323 (E.D.Pa. 2004) (same).

3.      In this case, the court has already determined and the parties agree that the dispute at issue falls within the scope of the arbitration agreement. Memorandum Order (Doc. No. 14) at 10; Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel (Doc. No. 13) at 3; Plaintiff's Requested Findings and Conclusions (Doc. No. 30) at 6.

4.      Therefore, the sole inquiry for the court at this stage is whether a valid agreement to arbitrate exists between the parties.

5.      Here, the parties stipulate that the Agreements at issue are contracts evidencing a transaction involving commerce, as defined by the FAA. Joint Stipulations, ¶ 3. Further, the parties stipulate that the Agreements contain an arbitration clause, which states:

> You agree that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of the Account Agreement or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration . . . . This arbitration provision shall be enforced and interpreted exclusively in accordance with applicable Federal law, including the Federal Arbitration Act.

Joint Stipulations, ¶ 4.

6.      The narrow question before the court, then, is *to whom* do the Agreements, and the arbitration clause, apply. Defendant concedes that the arbitration agreement would bind him to arbitrate a dispute with Advest, but argues that his dispute is with "Nussbaum Partners," not Advest, and, as such, that he is not obligated to arbitrate the dispute. This argument rests on the premise that, during the relevant time period, "Nussbaum Partners" was not covered by the arbitration clause in the Agreements because "Nussbaum Partners" was a separate entity from Advest. To the contrary, plaintiff argues that, during the relevant time period, "Nussbaum

Partners" was merely a fictitious name for a group of individual employees of Advest, and therefore that the arbitration agreement covers any dispute between Wagner and "Nussbaum Partners" because "Nussbaum Partners" really was Advest. In the alternative, plaintiff argues that even if "Nussbaum Partners" was considered a separate entity from Advest, the arbitration agreement Wagner signed would still bind him to arbitrate his dispute with "Nussbaum Partners" because, during the relevant time period, all employees of "Nussbaum Partners" were employees of Advest, and were therefore covered by the arbitration clause under the definitions of "we/us/our/Advest" in the Agreements. See Joint Stipulations, Ex. 1 at 18 (defining "We/us/our/Advest").

7.      The court is mindful of a need to be wary of determining any issue which may be germane to the underlying grievance.  Supreme Court precedent counsels a court deciding whether to compel arbitration under the FAA to take care to avoid deciding issues relevant to the underlying dispute. See AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649-50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. . . . 'The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'") (citing Steelworkers v. American Mfg. Co., 363 U.S. 554, 568 (1960) (footnote omitted)). Here, defendant urges this court to conclude that "Nussbaum Partners" is a separate legal entity from Advest, i.e., a partnership under Pennsylvania law. The court, however, can determine whether

to compel arbitration without resolving that issue and will heed the admonition of the Supreme Court to avoid deciding issues relevant to the underlying dispute.

8. The court recognizes that "as a matter of contract, no party can be forced to arbitrate unless that party has entered an agreement to do so." Painewebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002).

9. It is clear, however, that non-signatories to an arbitration agreement may be bound by the agreement to arbitrate under certain circumstances. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121-2 (3d Cir. 1993) (citing Arnold v. Arnold Corp., 920 F.2d 1269, 1281-82 (6th Cir. 1990) and Letizia v. Prudential Bache Securities, 802 F.2d 1185, 1187-88 (9th Cir. 1986)).

10. For example, in Pritzker, the United States Court of Appeals for the Third Circuit held that the obligation to arbitrate disputes based upon an agreement containing an arbitration clause extends to agents of signatories of the agreement. 7 F.3d at 1122. In so holding, the United States Court of Appeals for the Third Circuit joined the United States Courts of Appeals for the Sixth and the Ninth Circuits in the view that arbitration clauses extend to non-signatories based upon a showing of agency. Id. In Pritzker, the court considered whether an employee and a subsidiary of a brokerage firm were bound by the firm's agreement to arbitrate disputes although neither the employee nor the subsidiary were signatories to the arbitration agreement. The court held that both the employee and the subsidiary were bound by the arbitration agreement. As the court explained, "[u]nder traditional agency theory, . . . . [b]ecause a principal is bound under

the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." Id. at 1121 (citing Arnold, 920 F.2d at 1281-82 and Letizia, 802 F.2d at 1187-88).  The United States Court of Appeals for the Third Circuit more recently confirmed this principle. See, e.g., Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) ("There are five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) *agency*, (4) veil-piercing/alter ego, and (5) estoppel.") (citing Mag. Portfolio Consult, Gmbh v. Merlin Biomed Group, LLC, 268 F.3d 58, 61 (2d Cir. 2001)) (emphasis added).

11.     Because the relevant arbitration provision commits Wagner to arbitrate with "us," meaning Advest, its subsidiaries, affiliates, officers, directors, agents, or employees, Wagner may be compelled to arbitrate disputes with, among others, Advest's employees and agents.

12.     Here, assuming for purposes of this matter that "Nussbaum Partners" *is not* a separate entity, "Nussbaum Partners" would be found to be a group of Advest employees and Wagner would be compelled to arbitrate the dispute with "Nussbaum Partners" by virtue of it being a collection of employees of Advest who are subject to the Agreements. Likewise, because the Agreements reflect that disputes involving "employees" of Advest are subject to arbitration, the employees of Advest included in the "Nussbaum Partners" group would be compelled to arbitrate this dispute.

13.     Here, assuming for purposes of this matter that "Nussbaum Partners" *is* a separate entity, "Nussbaum Partners" would be found to be an agent of Advest. Assuming defendant is correct about the separate-entity status of "Nussbaum Partners," there is an agency relationship between

11

Advest and "Nussbaum Partners" founded on the supervision and control that Advest exerts over "Nussbaum Partners" and the manifestations of both parties to consent to that supervision and control, as evidenced by the paying of compensation and benefits, supervision of activities and accounts, and shared letterhead, office space, and telephone listing of "Nussbaum Partners" with Advest. See RESTATEMENT (SECOND) OF AGENCY § 1 cmt. a, b (1958). See also N.L.R.B. v. Sheet Metal Workers' Intern. Ass'n, Local Union No. 19, 154 F.3d 137, 142-43 (3d Cir. 1998) *(*quoting AT & T Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1434 (3d Cir. 1994) ("An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."); Menichini v. Grant, 995 F.2d 1224, 1233 n.14 (3d Cir.1993) ("Agency law recognizes the principal's ability to control and monitor agent behavior[.]"); RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to act.")).

14. Wagner would be compelled to arbitrate the dispute with "Nussbaum Partners" by virtue of it being, at the very least, an agent of Advest that is subject to the Agreements. Likewise, because the Agreements reflect that disputes involving "agents" of Advest are subject to arbitration, "Nussbaum Partners" as Advest's agent would be compelled to arbitrate this dispute.

15. This court, without needing to decide whether "Nussbaum Partners" is a separate legal entity from Advest, determines that, even assuming for the sake of argument that defendant is correct and that Advest and "Nussbaum Partners" are separate entities, the arbitration agreement

between Advest and Wagner requires that Wagner submit the instant dispute to arbitration because "Nussbaum Partners," if it is a separate entity, is at the very least an agent of Advest.

### III. OTHER MOTIONS

1. Plaintiff's Motion to Strike Portions of Defendant's Proposed Findings of Fact and Conclusions of Law (Doc. No. 35) is **DENIED AS MOOT**. Though there may be merit to plaintiff's arguments, the court made its determination based upon findings of fact and conclusions of law which are not the subject of plaintiff's motion.

2. Defendant's Motion to Consider Other Court Proceedings (Doc. No. 37) is **DENIED**. Even if the court were to consider the court proceedings which are the subject of defendant's motion, the information therein would not change the court's conclusion because the court has made its determination herein assuming that defendant may be correct in its claim that "Nussbaum Partners" was a separate entity.

### IV. CONCLUSION

The court compels defendant Wagner to arbitrate the underlying dispute in this case with Advest, including its agents and employees. This conclusion is based on a reading of the language of the arbitration agreement itself, the principles of the FAA, and a determination that if "Nussbaum Partners" is a separate entity it is, at the very least, an agent of Advest. As such, "Nussbaum Partners" is covered by the terms of the arbitration agreement and Wagner is required to arbitrate the underlying dispute in this case. The court refrains from determining whether "Nussbaum Partners" is a separate legal entity from Advest. It is not necessary for the court to resolve that issue which may be pertinent to the merits of the underlying dispute. The

court enjoins defendant Wagner from pursuing the dispute in contravention of the terms of the arbitration agreement.

**V. ORDER**

**AND NOW**, this 27th day of September, 2005, in accordance with this court's findings of fact and conclusions of law, **JUDGMENT** is hereby **ENTERED** against defendant and in favor of plaintiff. The court orders the defendant, George Wagner, to submit to arbitration all controversies with plaintiff arising out of the Agreements with Advest. The court enjoins defendant from proceeding in the civil action in the Court of Common Pleas of Allegheny County, Docket No. GD-03-14702, that arose out of the Agreements with Advest pending the outcome of the arbitration.

The clerk shall mark this case closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:    Robert L. Byer
Kirkpatrick & Lockhart Nicholson Graham
535 Smithfield Street
Henry W. Oliver Building
Pittsburgh, PA 15222-2312

Arnold Y. Steinberg
1420 Centre Avenue, #1504
Pittsburgh, PA 15219